[No. 18043.    Department Two.    April 24, 1924.]

# C. V. Ericsson, *Respondent,* v. G. M. Hubbard, *Appellant.*[1]

Compromise and Settlement (3, 4)—Construction of Agreement —Items Included. Where the parties to a contract for railroad ties compromised their differences by a subsequent agreement, and the evidence and findings were to the effect that the entire controversy was thereby settled, conclusions of law allowing a recovery for some of the items forming part of the controversy which must have been included in the settlement are erroneous.

Appeal (145)—Preservation of Grounds—Exceptions to Findings. Where findings are not excepted to and no request is made for proper findings, appellant is concluded thereby, and there can be no review of the evidence on appeal.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered December 9, 1922, upon findings in favor of the plaintiff, in an action on contract, tried to the court. Reversed.

*Geo. W. Korte* and *C. H. Hanford,* for appellant.
*Wright, Kelleher, Allen & Hilen,* for respondent.

Fullerton, J.—On October 26, 1920, the appellant, Hubbard, entered into a contract with the Oregon-Washington Railroad & Navigation Company, denominated as Order T-220, whereby, for certain specified prices, he agreed to deliver to the railroad company, and the railroad company agreed to take, not less than one hundred and fifty thousand, and not more than three hundred and fifty thousand, hewn cross-ties of certain prescribed dimensions, delivery to commence at once and to be completed by November 1, 1921. Hubbard immediately began the work of delivering the ties, and after he had delivered some one hundred and twenty thousand, and had about eighty thousand more

[1]Reported in 225 Pac. 234.

piled along the railroad tracks ready for delivery, the railroad company served notice on him to the effect that it would not accept more than the minimum number of ties enumerated in the contract. Hubbard had in the meantime entered into contracts with various tie manufacturers to furnish him with ties in accord with the railroad company's specifications, sufficient in number to fill approximately the maximum quantity named in his contract with that company. Two of such contracts were entered into with the respondent Ericsson. In the first of these Ericsson agreed to furnish not less than five thousand nor more than ten thousand of such ties, and in the second of the contracts he agreed to furnish twenty thousand ties.

Ericsson entered at once upon the performance of the contracts and manufactured some five thousand ties, which were delivered to and paid for by Hubbard in accordance with the terms of the contracts. Subsequent thereto he manufactured some five thousand five hundred and ninety-nine more, a part of which he hauled to the place of delivery and a part of which he had ready for hauling thereto, and these he tendered to Hubbard. Hubbard had at that time received the notice above mentioned from the railroad company, and was because thereof either unable or unwilling to accept and pay for the ties. Ericsson, after vainly trying to reach some agreement with him with respect to the disposition of the ties, was compelled to sell them, and this he did to another tie dealer at a price of twenty cents less per tie than the price named in his contract with Hubbard. Ericsson had also, prior to the time of Hubbard's refusal, arranged for furnishing the balance of the ties. He had secured the necessary timber, established a camp at the lumber site, and had erected buildings and supplied equipment necessary

to be used in manufacturing the ties at a cost, as he testified, of $500.

Hubbard, after receiving the notice from the railroad company, began an action against it as for a breach of its contract. Prior to its institution, he called upon Ericsson for a statement of his claim against him, which Ericsson furnished. In his complaint against the railroad company Hubbard set forth this claim. However, before the action came on for trial, the parties thereto compromised and settled their differences; the parties agreeing that the railroad company would take and that Hubbard would furnish, under the conditions of the original contract, at the prices named therein, a maximum of two hundred thousand ties.

In this action Ericsson sought to recover from Hubbard as for a breach of the contracts entered into between himself and Hubbard. In his complaint he alleged that he had suffered a loss of profits on the ties contracted for and which were not delivered in the sum of $5,939.11, and a loss of $832.20 on the ties he offered for delivery and was compelled to sell because of the refusal of Hubbard to receive them. Hubbard answered by denials, and by an affirmative plea to the effect that, after the settlement of his controversy with the railroad company, he sought a settlement with Ericsson, and that it was mutually agreed between them that Ericsson should be permitted to furnish seven thousand ties at the prices agreed upon in their original contract, in full satisfaction of any damages accruing to him by reason of the breach of that contract. The cause was tried to the court sitting without a jury, at the conclusion of which the court made, among others, the following findings of fact:

"III. Plaintiff entered into the performance of the aforesaid agreement and cut and delivered to the de-

fendant, and the defendant paid for about 5,000 hewn ties, and thereafter plaintiff cut and offered to deliver to said defendant upon said contract a total of 5,599 ties which said ties were wholly refused by said defendant without any just cause therefor, and plaintiff was compelled to sell the same upon the open market at a loss of twenty cents per tie, the market value of the ties having in the meantime depreciated to that extent, or at a total loss of $1,119.80.

"IV.   That after refusing to accept delivery of said ties hereinabove set forth, defendant also refused to accept any further ties upon the contracts hereinabove recited, and notified plaintiff to that effect and on account of said refusal, plaintiff was deprived of the profit which he could have and would have made upon the ties remaining to be delivered under said contracts, to-wit, a total of 20,839 ties.

"V.   In the preparation for the cutting of the additional ties aforesaid which the plaintiff was prevented from cutting by reason of the failure of the defendant to carry out his contract aforesaid, the plaintiff was compelled to and did expend for the erection of a camp and otherwise, the reasonable sum of five hundred dollars, no part of which has been repaid by said defendant to said plaintiff.

"VI.   On the 24th day of October, 1921, the plaintiff had not delivered the number of ties contracted for in and by the contract between him and the defendant aforesaid; the Oregon-Washington Railroad & Navigation Company had refused to accept the maximum number of ties called for in and by said contract T 220; defendant had made settlement with said corporation; the price for which ties could then be obtained was less than the price specified in the contract between plaintiff and defendant aforesaid; and the plaintiff then asserted a claim for damages against defendant for loss sustained by nonperformance of said contract; and in consideration of all those facts and conditions, it was on said date mutually agreed by and between plaintiff and defendant to compromise and settle plaintiff's claim aforesaid in the manner following:   Plaintiff to furnish seven thousand ties to make up in part

the number required to fulfill defendant's contract
T 220 for the minimum number to be furnished to said
corporation and defendant to pay plaintiff for said
seven thousand ties at the prices specified in their orig-
inal contract.

"VII. Thereafter pursuant to said compromise
agreement, the plaintiff did furnish to defendant 4,012
ties and not any greater number.

"VIII. Defendant paid plaintiff in full for said
4,012 ties at the price agreed upon as aforesaid.''

From the findings the court drew the following con-
clusions of law:

"I. That the plaintiff is entitled to judgment
against the defendant in the sum of Eleven Hundred
Nineteen and 80/100 Dollars ($1,119.80) by reason of
the loss suffered by him upon ties cut and refused to
be accepted by defendant and sold by plaintiff.

"II. That the plaintiff is entitled to judgment
against the said defendant in the sum of Five Hundred
Dollars ($500) for amounts expended by him for rea-
sonable preparation in carrying out his contract and
the carrying out of which was prevented by the wrong-
ful acts of the defendant.

"III. By a valid compromise agreement between
plaintiff and defendant, made and entered into on the
24th day of October, 1921, the plaintiff's claim for ad-
ditional damages sued for herein was fully settled and
compromised.

"IV. That the plaintiff is entitled to recover his
costs and disbursements herein to be taxed.''

Judgment was entered in accordance with the court's
conclusions.

The appellant makes two principal assignments of
error. He contends, first, that the evidence was insuf-
ficient to sustain the judgment, because there was not
such a showing of a compliance with the contracts by
the respondent as would put the appellant in default;

and second, that the conclusions of law and the judgment of the court are not supported by, but are contrary to, the facts as shown by the record and found by the court.

The first of these contentions we have found it unnecessary to consider, as we think the second fatal to the respondent's right to recover. The evidence on the question of the compromise was conflicting. The evidence in support of it, however, was to the effect that the entire controversy between the parties was settled and compromised by the subsequent agreement, and as we read the findings of fact made by the court, it adopted that view of the evidence. The specific claims to which the court referred in its findings and for which he concluded, as matter of law, that the respondent was entitled to recover, formed a part of the general controversy between the parties as much as did any of the other items for which he sought recovery, and a compromise and settlement of the general controversy must of necessity have included these as well as the other items.

The respondent, however, argues that this finding is contrary to and not supported by the evidence. But this is an objection he should have taken in the court below. In that court he neither excepted to the findings, nor did he, in so far as the record here discloses, tender findings proper to support the conclusions of the court. This precludes him in this court. We have held in a long line of cases that failure to except to findings precludes any review of the evidence on appeal, leaving only the question of the sufficiency of the findings to support the judgment. See *Halferty v. Schmidt,* 100 Wash. 304, 170 Pac. 1018, and the cases collected by Mr. Remington in his digest, Title: Appeal and Error, § 145.

The judgment is reversed, and the cause remanded with instructions to enter a judgment for the defendant, appellant here, to the effect that the plaintiff take nothing by his action.

MAIN, C. J., BRIDGES, PEMBERTON, and MITCHELL, JJ., concur.