[No. 19529.    Department Two.    May 12, 1926.]

JAMES O'BRIEN, *Respondent,* ·v. STEPHEN W. O'BRIEN *et al., Appellants.*[1]

[1] APPEAL (145)—EXCEPTIONS TO FINDINGS—NECESSITY—SUBSTITUTION OF CERTIFICATE OF TRIAL JUDGE. A certificate of the trial judge with reference to the findings of fact cannot take the place of exceptions required by the settled practice.

[2] SAME (140)—EXCEPTIONS—RULINGS AS TO EVIDENCE. In the absence of exceptions to findings of fact, they cannot be questioned; but the court will consider the objection that proof offered was improperly rejected.

[3] EVIDENCE (179)—PAROL TO SHOW INTENT OF PARTIES—ADMISSIBILITY—LUMBER OPERATIONS. Where a contract clearly defines certain "lumber operations" and is clear and unambiguous, oral evidence is not admissible to show the meaning of the words.

[4] SAME (149)—VARYING TERMS OF WRITTEN INSTRUMENT—LOGGING CONTRACT. Parol evidence is not admissible to vary the plain terms of a written contract.

Appeal from a judgment of the superior court for Spokane county, Oswald, J., entered February 3, 1925, upon findings in favor of the plaintiff, in an action for an accounting and a dissolution of a partnership, tried to the court, Affirmed.

*Garrecht & Twohy* and *C. C. Lantry,* for appellants.
*Ferris & Ferris,* for respondent.

'Reported in 245 Pac. 923.

MITCHELL, J.—The parties to this action, Stephen W. O'Brien and James O'Brien, were engaged in business together, and for the purpose of dissolving their business association, they signed a written agreement on May 12, 1922, which, upon reciting that they were jointly interested in lumber operations at Boundary, Washington, and in certain timber lands in the vicinity of Leadpoint, Washington, on Sherlock creek, O'Hara creek, and E. Cedar creek, also a saw mill on Sherlock creek, logs on skids at saw mill, approximately 325,000 feet of logs on skids at the Hodson mill, approximately 70,000 feet of lumber in pile at the railroad station at Boundary, Washington, also mill site and logging chute on Sherlock Creek and right of way therefor, provided, among other things, that James O'Brien sold and gave to Stephen W. O'Brien for ninety days the exclusive right to purchase the entire interest of James O'Brien in and to all the described real and personal property, it being agreed that James O'Brien should assume all indebtedness on account of certain pole operations and should be the sole owner of all the poles in pile at Boundary, Washington, and all cedar timber on the lands described with the right to remove the same and to have yard room for them at Boundary, and that James O'Brien was to receive $2,500. Stephen W. O'Brien was to take title to all the other property, provided that he should assume certain specified indebtedness on account of logs;

" . . . and provided S. W. O'Brien shall account to James O'Brien for one-half the net profits from the sale of lumber now in yard at Boundary, Washington, after all indebtedness for or by virtue of same, with interest thereon, has been fully liquidated."

It was further provided that Stephen W. O'Brien should assume all indebtedness against or by virtue of, lumber now in pile at Boundary or logs on skids at

mills as referred to. Other portions of the contract need not be noticed.

Stephen W. O'Brien took advantage of the option and on August 2, 1922, executed and delivered to James O'Brien an instrument referring to the option agreement, admitting he had on that day taken title from James O'Brien to the timber lands, saw mill, logs and lumber and agreed:

"that he will, and does hereby assume the following indebtedness:

"Fifteen hundred dollars due F. M. Turner on purchase of sawmill.

"All indebtedness against lumber and logs now outstanding.

"Eight hundred dollars due Kendrick Mercantile Co. on open account logging operations.

"First party also hereby agrees that he will pay to second party the sum of twenty-five hundred dollars as follows: One thousand dollars on or before November 1, 1922, and fifteen hundred dollars on or before March 1st, 1923. First party also agrees that, as soon as the lumber now in pile at Boundary, Wash., is liquidated, that he will pay to second party one half of the profits from such lumber operation."

Other provisions of the instrument are immaterial to the present inquiry.

Thereafter this suit was brought by James O'Brien to recover a money judgment for his share of what was alleged to be the net proceeds of the sale of lumber made by Stephen W. O'Brien, and to recover also on account of several specified amounts, which it was alleged that he, as a joint debtor with Stephen W. O'Brien, had been compelled to pay, which under the agreements above referred to, Stephen W. O'Brien had agreed to pay. The defendants, Stephen W. O'Brien and wife, by their answer admitted the execution and delivery of the written contracts set up in the com-

plaint, but denied that there was anything due from them to the plaintiff, and by a cross-complaint they alleged that the plaintiff and Stephen W. O'Brien were and had been joint partners, including activities other than those suggested in the instruments mentioned in the complaint the accounts of which, running over a number of years, they alleged were in great uncertainty and dispute, and further alleged with circumstantial detail that the partnership was largely indebted to him the exact amount of which could not be ascertained without an accounting; that there was occasion for a general accounting and for a dissolution of the partnership, which was prayed for. A reply put in issue the essential allegations of the cross-complaint.

Upon the trial of the case without a jury, formal findings of fact and conclusions of law were made and entered in favor of the plaintiff, upon which a money judgment was entered in favor of the plaintiff, against Stephen W. O'Brien and the community consisting of himself and his wife. The defendants have appealed.

[1] The defendants filed written exceptions to the findings of fact, which exceptions later on were stricken upon motion of the respondent in this court. Appellants call attention to a certificate made by the trial judge, and filed in this court after respondent's motion was made to strike the exceptions to the findings of fact and prior to the order of this court granting the motion, upon which certificate it is argued, in effect, in the reply brief, that there was no necessity for written exceptions to the findings and that the cause should be considered with like effect as though the exceptions were regular. But, without setting out herein the text of the certificate, it is sufficient to say that it was on file in this court at the time the exceptions were ordered stricken, and that we cannot approve a plan

by which such a certificate may take the place of exceptions required by the statutes and settled practice in this state.

[2] There is no contention, indeed, there could not be reasonably, that the findings of fact do not support the conclusions and judgment of the trial court. The assignments of error question the findings of fact, else they relate to the rejection of proof offered by the appellants. The first of these we are not allowed to consider, there being no exceptions to the findings. *Ericsson v. Hubbard,* 129 Wash. 351, 225 Pac. 234; *Hub Mercantile Co. v. Stingle,* 119 Wash. 607, 206 Pac. 567. We consider, however, the assignments that proof offered was improperly rejected. *Hub Mercantile Co. v. Stingle,* 119 Wash. 607, 206 Pac. 567; *Schlotfeldt v. Bull,* 17 Wash. 6, 48 Pac. 343.

[3] It is assigned as error that the court rejected offers of proof to show the meaning of the words "lumber operation" as used in the contract in connection with rejected proof offered to show that, at the time the contracts between the parties were made, it was understood between them that the cost of procuring logs spoken of as the O'Keefe and Hodson logs should be deducted from the proceeds of the sale of the lumber mentioned in the contract in calculating the profit from such sale, divisible between the parties under the contract. The court held that the terms of the contract were clear and unambiguous. We think the holding was correct. The parties themselves knew, and any one reading the contract can see, very plainly, that there was no uncertainty in the terms of the contract. It speaks of lumber, logs, poles and standing timber. They are clearly defined and spoken of in the contract. Before the offer of proof was made, it was clear from the evidence that the lumber mentioned in

the contract that was to be sold by the appellant and the net proceeds divided, was cut from timber taken from what was called the Showalter claim. The contract between the parties provided that Stephen W. O'Brien assume all indebtedness against the lumber at the station at Boundary, Washington, and all indebtedness against the logs, but, as to the items chargeable against the proceeds of the lumber in dividing the net profits between them the agreement specifically stated that

"S. W. O'Brien shall account to James O'Brien for one-half the net profits from the sale of the lumber now in yard at Boundary, Washington, *after all the indebtedness for or by virtue of same,* with interest thereon, has been fully liquidated."

That is, indebtedness for that particular material or lumber, not the indebtedness on account of logs lying elsewhere at that time.

[4] The only other assignment of error is that the court rejected an offer of proof as follows:

"We offer to prove that that $2,500.00 was segregated and agreed to be paid by the defendant to the plaintiff as being one half of the money which the partnership at that time, at the time of these contracts had invested in logging the O'Keefe and Hodson logs, and that it was agreed that the money so invested in those logs would come out of the profits from the sale of the lumber to be liquidated under these contracts, and that this $2,500.00 was simply being advanced by the defendant to the plaintiff at the time of the institution of the contracts."

It is clear, however, that the offer was an attempt to alter the plain terms of the written contracts which had been entered into by the parties and which were set out in full in the complaint and admitted by the answer. Further, it was another attempt to show that the cost of the O'Keefe and Hodson logs should be

charged against the proceeds of the sale of the lumber which, as already stated, was contrary to the plain provisions of the contracts.

Judgment affirmed.

TOLMAN, C. J., MAIN, MACKINTOSH, and PARKER, JJ., concur.